UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DELANO GAFFNEY,

                    Petitioner,                                    Hon. Paul L. Maloney

v.                                                                 Case No. 1:07-CV-46

JERI-ANN SHERRY,

                    Respondent.
_____/


## REPORT AND RECOMMENDATION

        This matter is before the Court on Gaffney's petition for writ of habeas corpus. In

accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed

findings of fact and recommendations for disposition of prisoner petitions, the undersigned

recommends that Gaffney's petition be **denied**.


## BACKGROUND

        As a result of events which occurred on or about May 19, 2001, Petitioner was

charged with first degree murder, being a felon in possession of a weapon, and possessing a firearm

during the commission of a felony.  (Trial Transcript, January 22, 2002, 25-26).  Marcelle Dorsey

was also charged in this matter and tried with Petitioner.  Several individuals testified at Petitioner's

and Dorsey's jury trial, the relevant portions of which are summarized below.

**James Fisher**

As of August 19, 2000, Fisher was employed as a police officer for the City of Detroit. (Trial Transcript, January 23, 2002, 152). As of that date, Officer Fisher was in charge of the investigation into the shooting death of Abdul Scott. (Tr. 152). As part of his investigation, Officer Fisher spoke with Cherell King. (Tr. 152). Based in part on what Fisher learned from King, Petitioner, Marcelle Dorsey, and Lanier McPherson were charged with the murder of Abdul Scott. (Tr. 152-59). However, because Cherell King failed to appear at the subsequent preliminary examination, the charges against Petitioner and Marcelle Dorsey were dismissed. (Tr. 159-60).

**Cassandra King**

Cassandra King was Cherell King's mother. (Trial Transcript, January 23, 2002, 38). King last saw her son alive on May 18, 2001. (Tr. 43). Soon thereafter she was informed that her son had been murdered. (Tr. 44). Cherell King was nineteen years of age at the time. (Tr. 38). At the time of his death, Cherell King was living with Tequila Holloway. (Tr. 45-46). Cherell King had been friends with Petitioner and Marcelle Dorsey for five or six years. (Tr. 39-40). Marcelle Dorsey was also known as Marty or Doom. (Tr. 40-41). Petitioner was also known as Hondo. (Tr. 41). Cherell King was also friends with Lanier McPherson. (Tr. 49).

**Daneen Bell**

In May 2001, Bell rented a gray, four-door, Ford Focus. (Trial Transcript, January 23, 2002, 195, 201). On May 19, 2001, Bell loaned the car to Cherell King. (Tr. 196-97, 201-02). King agreed to return the car to Bell the following afternoon. (Tr. 197). King failed to return the

car as planned which surprised Bell because King "was always on time." (Tr. 197). In fact, after loaning her car to King, she never saw King again. (Tr. 197). A "couple of months" after this incident, Petitioner told Bell, "if they find your vehicle, let me know." (Tr. 199).

**Reto Andrews**

Andrews was "a good friend" to Cherell King. (Trial Transcript, January 23, 2002, 55-56). Cherell King was also known as Rell. (Tr. 61). Andrews also knew Petitioner and Marcelle Dorsey. (Tr. 54-56). On a Saturday in May 2001, Andrews encountered Cherell King. (Tr. 59). Andrews was unsure which particular Saturday this occurred, but the court took judicial notice that the Saturdays in May 2001, occurred on the 5th, 12th, 19th, and 26th days of the month. (Tr. 59).

On the date in question, at approximately midnight, Andrews observed King driving a gray Focus. (Tr. 59-60). King drove past Andrews, then "stopped, blew the horn, [and] backed up." (Tr. 61). Andrews approached King's vehicle and the two began talking. (Tr. 61-62). When asked what he was doing, King said he was "just riding." (Tr. 61-62). Andrews told King, "I'll ride with you" and entered the vehicle. (Tr. 62).

King drove to Petitioner's residence, at which point Petitioner and Marcelle Dorsey "walked off the porch." (Tr. 62). The four men spoke briefly and then Petitioner and Dorsey entered the vehicle. (Tr. 62-63). Petitioner was sitting in the back seat directly behind Cherell King and Dorsey was sitting in the back seat directly behind Andrews. (Tr. 63). After riding around for a short time, Petitioner and King started arguing about "some money." (Tr. 63-65). At one point, King told Petitioner, "he was gon' pay him his money," at which point Petitioner told King to "stop this motherfuckin' car." (Tr. 65-66). King stopped the vehicle and then Andrews heard "a big

3

bang." (Tr. 66). Andrews looked at King and saw that he was dead from a gunshot to the head. (Tr. 68). Andrews turned around and saw that Petitioner and Dorsey were both brandishing weapons. (Tr. 66). Dorsey was pointing his gun at Andrews' back and Petitioner was pointing his gun at Cherell King's neck. (Tr. 66-67). Petitioner's weapon was either a .38 caliber or a nine millimeter. (Tr. 74). Dorsey was carrying a .45 caliber handgun. (Tr. 74).

Petitioner then removed King's body from the driver's seat and placed it "in the back." (Tr. 69). Petitioner then told Andrews to "get the fuck out and get in the back." (Tr. 69). Dorsey took Andrews' place in the front passenger seat. (Tr. 70). Petitioner then sat in the driver's seat and told Andrews, "bitch, you about to tell me where to dump his body." (Tr. 70). Andrews directed Petitioner to an abandoned house on Denton Street in Hamtramck, where Petitioner placed King's body. (Tr. 70-75). Petitioner told Andrews "bitch, if you tell anybody you gon' be next." (Tr. 77-78).

**Marek Kalinowski**

As of June 4, 2001, Kalinowski was employed as a police officer for the City of Hamtramck. (Trial Transcript, January 23, 2002, 205). On that date, Officer Kalinowski was dispatched to a building on Denton Street to investigate "a foul smell." (Tr. 205-06). Kalinowski discovered a "highly decomposed" body in the building. (Tr. 206-10).

**Dennis Nunlee**

As of June 4, 2001, Nunlee was employed as a Hamtramck Police Officer. (Trial Transcript, January 23, 2002, 222). On that date, Officer Nunlee accompanied Officer Kalinowski

to a building on Denton Street to investigate "a heavy odor." (Tr. 222). Nunlee and Kalinowski discovered a "decomposed" body inside the building. (Tr. 222-24).

**Dr. Yung Chung**

On June 5, 2001, Dr. Chung performed an autopsy on a "badly decomposed" body. (Trial Transcript, January 23, 2002, 180-82). The doctor estimated that the individual had been deceased "two or three weeks and perhaps longer." (Tr. 187). The body was too badly decomposed to be visually identified, but fingerprint identification revealed that the body was Cherell King. (Tr. 190-91). The autopsy revealed that King died from "a single gunshot wound to the head." (Tr. 183).

**Lanier McPherson**

McPherson was friends with Petitioner, Cherell King, and Marcelle Dorsey. (Trial Transcript, January 23, 2002, 228-30). In November 2000, McPherson, Petitioner, and Dorsey were charged with killing Abdul Scott. (Tr. 230-32). A hearing on the matter was later held, at which Cherell King failed to appear. (Tr. 230). Following this hearing, the charges against Petitioner and Dorsey were dismissed. (Tr. 231-32). McPherson subsequently asked Petitioner if he would testify on his behalf at his upcoming trial. (Tr. 232-34). Petitioner responded that he "didn't know if he would be able to make it or not." (Tr. 234).

After Petitioner was arrested for his involvement in the killing of Cherell King, Petitioner was housed in the county jail with McPherson. (Tr. 235). In September 2001, McPherson testified at a hearing concerning conversations he had with Petitioner while the pair were together

in the county jail. (Tr. 233-37). At the September 2001 hearing, McPherson testified that Petitioner told him that "he [Petitioner] didn't know what he was going to do because [Cherell King] had been arrested by Homicide in April and they didn't know what he was going to tell, if he was going to come to court or what he was going to do." (Tr. 236). McPherson further testified, at the September 2001 hearing, that Petitioner told him that he killed King because "he was pretty much paranoid what Cherell may have told Homicide when he got caught back in April." (Tr. 237). At Petitioner's trial, McPherson testified that his testimony at the September 2001 hearing had been untruthful. (Tr. 236-37).

McPherson testified at a second hearing in October 2001. (Tr. 239-43). At this hearing, McPherson testified that Petitioner told him that he was concerned what King may have told police about his involvement in the Scott shooting. (Tr. 240-42). McPherson further testified that Petitioner told him that he shot King in a car and then "got rid of" King's body "over in Hamtramck." (Tr. 240-43). At Petitioner's trial, McPherson testified that this testimony was also untruthful. (Tr. 243). McPherson also acknowledged, however, that Petitioner had only recently implicated another person in the Scott killing and that his [McPherson's] trial in the Scott matter was still pending. (Tr. 238-39, 244-45).


**George Harris**

As of Cherell King's murder, Harris was employed as an Investigator with the City of Detroit Police Department. (Trial Transcript, January 24, 2002, 46-47). As part of his investigation of King's murder, Harris interviewed Lanier McPherson in July or August 2001. (Tr. 47-49). McPherson related to Harris details about King's killing that was not known by the police

or the general public.  (46-50).

**Tequila Holloway**

On May 19, 2001, Petitioner arrived at her house at approximately 11:45 p.m. to attend a birthday party. (Trial Transcript, January 24, 2002, 81-83). Petitioner remained at Holloway's residence until approximately 1:30 a.m. (Tr. 84). During his stay, Petitioner acted "strangely" and was "very subdued." (Tr. 87).

**Kevin Holloway**

On May 19, 2001, Kevin Holloway celebrated his birthday at Tequila Holloway's residence. (Trial Transcript, January 24, 2002, 90-92). Kevin Holloway and Petitioner arrived at Tequila Holloway's residence at approximately 11:00 p.m. that evening. (Tr. 92). Petitioner and Kevin Holloway left the party at 2:45 a.m. (Tr. 92-93).

**Gaylynn Robinson**

At approximately 11:30 p.m. on May 19, 2001, Gaylynn Robinson, her daughter, Tasha Robinson, and Marcelle Dorsey went dancing at a local club. (Trial Transcript, January 24, 2002, 100-02). The trio remained at the club until approximately 1:30 a.m. (Tr. 102).

**Lanise Thomas**

At approximately 11:30 p.m. on May 19, 2001, Thomas arrived at a local club where she encountered Marcelle Dorsey. (Trial Transcript, January 24, 2002, 109-11). Dorsey stayed at the club until approximately 1:30 a.m. (Tr. 111).

**Tasha Robinson**

At approximately 11:30 p.m. on May 19, 2001, Tasha Robinson, her mother, Gaylynn Robinson, and Marcelle Dorsey went dancing at a local club. (Trial Transcript, January 24, 2002, 117-19). The trio remained at the club until approximately 1:30 a.m. (Tr. 119-20).

Following the presentation of evidence, the jury found Petitioner guilty of second degree murder and possession of a firearm during the commission of a felony. (Trial Transcript, January 29, 2002, 9). Petitioner was sentenced to 270 to 480 months on the murder conviction and two years for possessing a firearm during the commission of a felony. (Sentencing Transcript, February 13, 2002, 10). Petitioner appealed his convictions in the Michigan Court of Appeals, asserting the following claims:

> I. The trial court reversibly erred in admitting evidence regarding prior bad acts by Defendant Gaffney in violation of his state and federal constitutional rights to a fair trial and MRE 404B.
>
> II. The trial court violated Defendant's due process right to confront and cross-examine witnesses by allowing the prosecutor to call an officer to testify regarding the contents of the victim's prior statement to the police in another murder case.
>
> III. Defendant was denied due process and a fair trial, where the prosecutor improperly vouched for the credibility of McPherson's prior testimony.
>
> IV. The trial judge reversibly erred when she instructed the jurors as to second-degree murder, where Defendant Gaffney was prosecuted solely on a first-degree murder theory, thereby violating Defendant's constitutional right to due process of law and notice of the charges against him.
>
> V. Defendant was denied his right to the effective assistance of counsel at trial where counsel failed to

object to the prosecutor's closing argument and where counsel failed to object to the trial court giving a second-degree murder instruction.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Gaffney*, No. 240857, Opinion (Mich. Ct. App., Oct. 30, 2003). Asserting the same claims, Petitioner moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Gaffney,* No. 125268, Order (Mich., April 30, 2004).

Petitioner subsequently filed in the trial court a motion for relief from judgment, asserting numerous claims. The trial court denied Petitioner's motion. *People v. Gaffney*, No. 01-011553-01, Opinion and Order (Wayne Cnty. Cir. Ct., Crim. Div., Feb. 15, 2005). Petitioner then moved in the Michigan Court of Appeals for leave to appeal, asserting the following claims:

I.     Defendant was deprived of his Fourteenth Amendment constitutional right to a fair trial and due process of law, where the trial court failed to sua sponte instruct his jury with a cautionary instruction on accomplices, when evaluating the testimony of accomplice witnesses McPherson, King and Andrews.

II.    Defendant was deprived of his Fourteenth Amendment constitutional right to a fair trial and due process of law, where the trial judge allowed the prosecutor to elicit inadmissible hearsay testimony from co-conspirator McPherson regarding an alleged "party admission" by the Defendant allegedly admitting that he killed Charell King.

III.   Defendant was deprived of his Fourteenth Amendment constitutional right to a fair trial and due process of law, by multiple acts of prosecutorial misconduct throughout his trial.

IV.    Defendant's Sixth Amendment right was gravely violated, where the trial court and prosecutor

undermined the fidelity of court rule MCR 2.511, which was not observed in the jury selection process.

V.    Defendant's Sixth and Fourteenth Amendment rights were compromised by ineffective assistance of trial and appellate counsel's inaction and omissions, which hindered Defendant's constitutional protection to a fair trial and due process of law on both levels.

VI.    The cumulative effects of ineffective assistance of counsel at both trial and direct appeal levels, prosecutorial misconduct and the trial court errors denied Defendant of his Sixth and Fourteenth Amendment rights to a fair trial, effective assistance of counsel and due process of law as guaranteed by the Michigan and United States Constitutions.

The court denied Petitioner's motion "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Gaffney*, No. 264489 (Mich. Ct. App., Mar. 16, 2006). Asserting the same claims, Petitioner moved in the Michigan Supreme Court for leave to appeal. Petitioner's motion was denied because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Gaffney*, No. 130867 (Mich., Nov. 29, 2006). On January 17, 2007, Petitioner initiated the present action in which he asserts the following claims:

I.    The trial court reversible erred in admitting evidence regarding prior bad acts by Defendant in violation of his federal constitutional rights.

II.    The trial court violated Defendant's due process rights to confront and cross-examine witness.

III.    Defendant was denied due process and a fair trial, where the prosecutor improperly vouched for the credibility of a witness.

IV.    The trial judge violated Defendant's due process rights when she instructed jurors as to second degree murder where Defendant was prosecuted on a first

degree murder theory.

V.      Defendant was denied the effective assistance of
        counsel where counsel failed to object to prosecutor's
        closing argument, and failed to object to trial judge
        giving second-degree murder instructions.

VI.     Defendant was deprived of due process of law, where
        the trial court failed to sua sponte instruct the jury
        with a cautionary instruction on accomplices.

VII.    Defendant was deprived of a fair trial and due process
        of law, where the trial judge allowed the prosecutor to
        elicit inadmissible hearsay testimony from co-
        conspirator McPherson.

VIII.   Defendant was deprived of a fair trial and due process
        of law by multiple acts of prosecutorial misconduct.

IX.     Defendant's Sixth Amendment rights were violated
        where the trial court and prosecutor undermined the
        fidelity of court rule MCR 2.511

X.      Defendant's Sixth and Fourteenth Amendment rights
        were compromised by ineffective assistance of trial
        and appellate counsel's inaction and omissions.

XI.     The cumulative effects of ineffective assistance of
        counsel at both trial and direct appeal, prosecutorial
        misconduct, and the trial court errors denied
        Defendant of his Sixth and Fourteenth Amendment
        rights to a fair trial.

## STANDARD OF REVIEW

Gaffney's petition is subject to the provisions of the Antiterrorism and Effective

Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the

substantive standards for granting habeas relief under the following provisions:

(d)     An application for a writ of habeas corpus on behalf of a
        person in custody pursuant to the judgment of a State court

12

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529

U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority. The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Petitioner can rebut this presumption only by clear and convincing evidence. *Id.*

In certain circumstances, however, the deferential standard articulated above does

not apply. First, if the state court resolves a particular claim but fails to articulate its analysis, the Court must apply "modified AEDPA deference." *Vasquez v. Jones*, 496 F.3d 564, 569-70 (6th Cir. 2007). Under this standard, "the court conducts a 'careful' and 'independent' review of the record and applicable law, but cannot reverse 'unless the state court's decision is contrary to or an unreasonable application of federal law.'" *Id.* at 570. However, where the state court has altogether failed to review a particular claim, such is reviewed de novo. As the Sixth Circuit has indicated, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). In such circumstances, the court conducts a *de novo* review. *Id.*; *see also Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS[1]

## I.      Evidence of Prior Bad Acts

As discussed above, as part of his investigation into the murder of Abdul Scott, Officer Fisher spoke with Cherell King. Based in part on what he learned from King, Petitioner, Marcelle Dorsey, and Lanier McPherson were charged with killing Scott. McPherson also testified that he, Dorsey, and Petitioner were charged with killing Scott. The trial judge cautioned the jury that this evidence was to be considered for a limited purpose:

---

[1] While Gaffney has identified in his petition for writ of habeas corpus the various claims he is asserting in this Court, such contains little analysis or discussion of such claims. Petitioner has, however, attached to his petition certain state court pleadings in which he more fully discusses and analyzes his various claims. The Court considers these state court pleadings to be incorporated into Gaffney's petition and will consider them accordingly.

And I am going to tell you, ladies and gentlemen, that we're only talking about this Abdul Scott case because it is the prosecutor's theory that this provided a motive for this crime. But you should not assume that these gentlemen were involved in it or anybody else was involved in it. You should not make any judgments on it. It's not relevant to this case what happened in another case except that it is the prosecutor's position that this is a motive. So you should only consider this evidence for that sole purpose.

(Trial Transcript, January 23, 2002, 177).[2]

Petitioner asserts that the decision to admit such bad acts evidence violated his right to a fair trial. Generally, errors by a state court on matters involving the admission or exclusion of evidence are not cognizable in a federal habeas proceeding. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Habeas relief is warranted, however, if the error "had substantial and injurious effect or influence in determining the jury's verdict." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). This requires Petitioner to demonstrate "actual prejudice" resulting from a constitutional error. *Clemmons*, 34 F.3d at 357.

To establish constitutional error, Petitioner cannot simply argue that the trial court's evidentiary ruling was improper, as "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Rather, Petitioner must establish that his conviction violated the Constitution, laws, or treaties of the United States. *Id.* In this respect, it is recognized that "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh*, 329 F.3d at 512; *see also*, *Norris v. Schotten*, 146 F.3d 314, 328-29 (6th Cir. 1998) (citing *Estelle*, 502 U.S. at 67-68).

Fundamental fairness does not "require a perfect trial," *Clemmons*, 34 F.3d at 358,

---

[2]   In her final instructions to the jury, the trial judge reiterated that this evidence was to only be considered for the limited purpose of "whether this evidence tends to show that the defendants had a motive to commit this crime." (Trial Transcript, January 24, 2002, 190).

and, moreover, courts have defined those violations which violate fundamental fairness "very narrowly." *Bugh*, 329 F.3d at 512. State court evidentiary rulings do not offend due process unless they violate "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* As is well recognized, however, the United States Supreme Court has never held that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. *Bugh*, 329 F.3d at 512-13; *Hester v. Booker*, 2006 WL 1555972 at *4 (E.D. Mich., June 2, 2006).

There is no indication that introduction of the evidence in question was fundamentally unfair to Petitioner. Moreover, because the Supreme Court has never held that the admission of other bad acts evidence violates a criminal defendant's due process rights, Petitioner is not entitled to habeas relief. *Bugh*, 329 F.3d at 512-13; *Hester v. Booker*, 2006 WL 1555972 at *4 (E.D. Mich., June 2, 2006). Accordingly, this claim raises no issue upon which habeas relief may be granted.

**II.** **Confrontation Clause**

On direct examination, Officer Fisher testified that as part of his investigation into the killing of Abdul Scott he spoke with Cherell King. (Trial Transcript, January 23, 2002, 152-62). Fisher further testified that based, in part, on what he learned from King, Petitioner, Marcelle Dorsey, and Lanier McPherson were charged with killing Scott. Petitioner asserts that Officer Fisher's testimony on direct examination violated his constitutional right to confront the witnesses against him. Specifically, Petitioner asserts that the admission of this testimony was improper because he was denied the opportunity to cross-examine Cherell King.

17

In *Crawford v. Washington*, 541 U.S. 36 (2004),[3] the Court held that the admission of testimonial statements by an out-of-court declarant violate the Confrontation Clause unless the declarant is unavailable to testify and the defendant previously had the opportunity to cross-examine the declarant. *Id.* at 42-69. Even if the Court assumes that King's statements were "testimonial" in nature, Petitioner's Confrontation Clause rights were not violated because the testimony in question contains no reference to the content of King's statement. (Trial Transcript, January 23, 2002, 152-62). Fisher did not relate what King told him, but simply testified that based in part on King's statement, Petitioner, Marcelle Dorsey, and Lanier McPherson were charged with killing Abdul Scott. Accordingly, the Court finds that this claim raises no issue on which habeas relief may be granted.

## III.        Prosecutorial Misconduct

In his closing argument to the jury, the prosecutor made the following comments regarding Lanier McPherson's testimony:

> He had nothing to gain by implicating these two men. In fact, he said at the end of his testimony I was angry with him. Well he was angry with them and then he implicated them with the truth.

>            *                    *                    *

> So when [McPherson] is talking, he has a reason to talk to Gaffney. Gaffney, are you gonna come down and help me out, testify for me?

---

[3] The *Crawford* decision was issued March 8, 2004, more than two years after the conclusion of Petitioner's trial. The question, therefore, becomes the extent to which *Crawford* is to be applied retroactively. *Crawford* was decided following the decision by the Michigan Court of Appeals affirming Petitioner's conviction on direct appeal, but before the decision by the Michigan Supreme Court denying Petitioner's request for leave to appeal that decision. The Supreme Court has indicated that *Crawford* announced a "new rule" of constitutional law. *See Whorton v. Bockting*, 549 U.S. 406, 416 (2007). As such, *Crawford* applies retroactively "only to cases that [were] still on direct review" as of the date it issued. *Id.* Accordingly, because Petitioner's case was still on direct review when *Crawford* was decided, the rule announced in *Crawford* applies in this matter.

Gaffney says no. He says, oh, you are not gonna testify for me. Well
I'm angry. I'm gonna tell the police the truth about you.

(Trial Transcript, January 24, 2002, 141-43).

Petitioner asserts that the prosecutor improperly vouched for McPherson's credibility,

thereby violating his right to a fair trial.

When a petitioner makes a claim of prosecutorial misconduct, "the touchstone of due

process analysis...is the fairness of the trial, not the culpability of the prosecutor." *Serra v. Michigan*

*Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209,

219 (1982)). The issue is whether the prosecutor's conduct "so infected the trial with unfairness as

to make the resulting conviction a denial of due process." *Gillard v. Mitchell*, 445 F.3d 883, 897

(6th Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). Thus, even if the

challenged comments were improper, habeas relief is available only where the comments "were so

flagrant as to render the entire trial fundamentally unfair." *Gillard*, 445 F.3d at 897. When

assessing whether an improper comment resulted in a denial of the right to a fair trial, the Court must

consider the following factors: (1) the likelihood that the comments mislead the jury or prejudiced

the accused; (2) whether the comments were extensive or isolated; (3) whether the remarks were

deliberately or accidentally presented to the jury; and (4) whether the evidence against the accused

was substantial. *Id.*

While it is improper for an attorney to express a personal opinion or belief as to the

truth or falsity of any testimony, an attorney "must be given leeway to argue reasonable inferences

from the evidence." *United States v. Collins*, 78 F.3d 1021, 1039-1040 (6th Cir. 1996) (citations

omitted). Moreover, where there is conflicting testimony, "it may be reasonable to infer, and

accordingly to argue, that one of the two sides is lying." *Id.* Furthermore, so long as he does not

improperly vouch for a witness, it is proper for the prosecutor to review the evidence presented and comment on the strength of the State's case. *United States v. Reliford*, 58 F.3d 247, 250-51 (6th Cir. 1995) (citations omitted). Improper vouching occurs only when a jury could "reasonably believe that the prosecutor was indicating a personal belief in a witness' credibility." *Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993) (citations omitted).

The Court discerns nothing improper by the comments in question. The prosecutor did not express a personal opinion concerning McPherson's credibility, but instead legitimately commented on the evidence and how such supported the State's theory of the case. The Michigan Court of Appeals rejected this argument, observing that:

It is well settled that "the prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." A review of the prosecutor's remarks in context reveals that he was not vouching for McPherson's credibility, but instead was merely reviewing the evidence in the case and responding to defendant's theory of the case, which necessarily attacked McPherson's credibility when giving his former testimony. The prosecutor's comments did not vouch for McPherson's credibility, but rather, reiterated to the jury that when McPherson implicated Dorsey and Gaffney before trial, he did not have anything to gain, because at that time, they had refused to testify on his behalf in the other murder case.

The prosecutor argued from the evidence that McPherson's motivation for incriminating Dorsey and Gaffney before trial was because he was angry with them for failing to exculpate him in the other murder case. Subsequently, Gaffney implicated someone else as the shooter in the other murder case, thereby relieving McPherson of principal liability. The prosecutor argued that the jury should believe McPherson's pretrial testimony, because his testimony at trial was influenced by the fact that Gaffney would testify favorably for McPherson in his upcoming trial in the other murder case, i.e., if McPherson exculpated Gaffney in the instant case, Gaffney would return the favor and exculpate McPherson in the other case.

*People v. Gaffney*, No. 240857, Opinion at 4 (Mich. Ct. App., Oct. 30, 2003) (internal citations omitted).

This conclusion is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision is not based on an unreasonable determination of the facts in light of the evidence presented. In sum, Petitioner has failed to demonstrate that the prosecutor's comments violated his right to a fair trial. Thus, this claim raises no issue upon which habeas relief may be granted.

**IV.        Jury Instructions**

Petitioner was charged with first degree murder and the jury was instructed on this charge, but the trial judge also informed the jury that it "may also consider the lesser crime of second-degree murder." (Trial Transcript, January 24, 2002, 193-97). Petitioner asserts that permitting the jury to consider the charge of second degree murder violated his right to due process in that he "was not given notice of the charges against him."

The Due Process Clause of the Fourteenth Amendment affords to every criminal defendant the "right to notice of the charges against him." *Browning v. Foltz*, 837 F.2d 276, 280 (6th Cir. 1988) (citing *Cole v. Arkansas*, 333 U.S. 196, 201 (1948)). Accordingly, a "conviction upon a charge not made" constitutes a denial of due process. *Jackson v. Virginia*, 443 U.S. 307, 314 (1979) (citations omitted). Furthermore, to obtain relief because of "incorrect jury instructions," Petitioner must "show that the instructions, as a whole, were so infirm that they rendered the entire trial fundamentally unfair." *Murr v. United States*, 200 F.3d 895, 906 (6th Cir. 2000) (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)).

At the time of Petitioner's trial, Michigan law *mandated* that the trial court instruct the jury on the charge of first degree murder as well as second degree murder. *See People v. Jenkins*, 236 N.W.2d 503, 504 (Mich. 1975). As the *Jenkins* court held:

> The statutory difference in the penalties provided for first-degree murder and second-degree murder are great. A person convicted of first-degree murder must be sentenced to life imprisonment and is not eligible for parole. A person convicted of second-degree murder may be sentenced to life imprisonment or for any term of years up to life, but that sentence is not mandatory. A person convicted of second-degree murder may be paroled.
>
> Because of the significant differences in the penalties between first-and second-degree murder, and because every charge of first-degree murder necessarily includes the lesser offense of second-degree murder, in every trial for first-degree murder, including felony murder, the trial court is required to instruct the jury Sua sponte, and even over objection, on the lesser included offense of second-degree murder.

*Id.* (internal citations omitted).

The Court notes that *Jenkins* was overruled several months after Petitioner's trial concluded. *See People v. Cornell*, 646 N.W.2d 127, 139-40 n.13 (Mich 2002) (holding that where a defendant is charged with first degree murder, an instruction on second degree murder "is not automatically required," but is "proper if the intent element differentiating the two offenses is disputed and the evidence would support a conviction of second-degree murder"). The *Cornell* court further held that its decision "is to be given limited retroactive effect, applying to those cases pending on appeal in which the issue has been raised and preserved." *Id.* at 145. In resolving this particular claim, the Michigan Court of Appeals acknowledged the *Cornell* decision, but concluded that because Petitioner "did not object to the lesser charge," he could not avail himself of the holding in *Cornell*. *People v. Gaffney*, No. 240857, Opinion at 4-5 (Mich. Ct. App., Oct. 30, 2003). The

court of appeals further observed that "[m]oreover, the jury was free to conclude, as it apparently did, that while convinced that defendants murdered King, the prosecution's proofs regarding first-degree murder were lacking." *Id.* at 5.

The Court discerns no error in the challenged instructions. Petitioner was aware that he had been charged with first degree murder. Moreover, given then current Michigan law, Petitioner was also aware that he might instead be convicted of second degree murder. The Michigan Court of Appeals rejected this claim, observing in relevant part:

> because Gaffney was charged with first-degree murder, of which second-degree murder is a necessarily lesser included offense, his claim that his right to notice was violated is without merit.

*Id.* (internal citation omitted).

This determination is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision is not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

**V.**         **Ineffective Assistance of Counsel**

Petitioner asserts that his right to the effective assistance of counsel was denied where his trial counsel: (1) failed to object to the prosecutor's comments in closing argument vouching for the credibility of Lanier McPherson, and (2) failed to object to the trial court's decision to instruct the jury on the lesser included offense of second-degree murder.

To establish that he was denied the right to the effective assistance of counsel, Petitioner must establish that his counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Accordingly, Petitioner must demonstrate that his attorney's actions were unreasonable under prevailing professional norms. *Id.* at 688. In assessing such a claim, however, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As discussed above, there was nothing improper about the prosecutor's closing argument or the trial court's decision to instruct the jury on the lesser included offense of second-

degree murder. Thus, Petitioner cannot establish that his attorney was deficient for failing to object to such. Moreover, even if Petitioner could satisfy the first prong of the analysis, he cannot demonstrate that he was prejudiced thereby. The Michigan Court of Appeals rejected this claim, observing that "[i]t is well settled that trial counsel is not ineffective for failing to raise a futile objection." *People v. Gaffney*, No. 240857, Opinion at 6 (Mich. Ct. App., Oct. 30, 2003).

This conclusion is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision is not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

**VI.        Remaining Claims**

Petitioner failed to present the remaining claims (claims VI-XI) in his habeas petition on direct appeal in the state courts. Instead, Petitioner first asserted these claims in post-conviction motions for relief. Finding that Petitioner had failed to comply with relevant state procedure, the Michigan Court of Appeals and the Michigan Supreme Court declined to address the merits of these particular claims. Respondent asserts that this Court is likewise barred, by the procedural default doctrine, from addressing the merits of Petitioner's habeas claims.

Under the procedural default doctrine, federal habeas review is barred where a state court declined to address Petitioner's claims because of a failure to satisfy state procedural requirements. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Where Petitioner's claims have been procedurally defaulted, the state court judgment rests on an independent and adequate state ground precluding review by a federal court. *See Coleman*, 501 U.S. at 750-51; *Wainwright*

*v. Sykes*, 433 U.S. 72, 81 (1977); *Harris v. Reed*, 489 U.S. 255, 262 (1989).

The Sixth Circuit employs a multi-part test to determine if a petitioner has procedurally defaulted a particular issue: (1) there must exist a state procedural rule that is applicable to the claim and with which the petitioner failed to comply, (2) the state court must have actually enforced the state procedural rule, and (3) the default must constitute an "independent and adequate" state ground on which the state can rely to foreclose review of a federal constitutional claim. *See Williams v. Bagley*, 380 F.3d 932, 966 (6th Cir. 2004). For the procedural default doctrine to apply, "the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). However, review by a state court of a procedurally defaulted claim to prevent manifest injustice does not constitute a review on the merits sufficient to excuse procedural default. *See Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) ("a state court's plain error analysis does not save a petitioner from procedural default").

If Petitioner has procedurally defaulted a particular claim, federal habeas review is available only if he can establish either (1) the existence of cause for his default and actual prejudice resulting therefrom, or (2) that the failure to consider the merits of the claim will result in a fundamental miscarriage of justice. *See Bagley*, 380 F.3d at 966 (citing *Coleman*, 501 U.S. at 750).

With respect to cause, Petitioner must demonstrate the existence of some objective factor, external to the defense, which impeded his efforts to comply with the applicable procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Johnson v. Wilson*, 187 Fed. Appx. 455, 458 (6th Cir., June 16, 2006). To establish that a miscarriage of justice would result from the failure to review his procedurally defaulted claims, Petitioner must make a "colorable showing of factual

innocence." *McCleskey v. Zant*, 499 U.S. 467, 495 (1991). To satisfy this requirement Petitioner must demonstrate the existence of new and reliable evidence, not presented at trial, which establishes that some constitutional error "probably resulted" in the conviction of an innocent person. *See Schlup v. Delo*, 513 U.S. 298, 324-27 (1995). The evidence must show that it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 326-27.

Michigan Court Rule 6.508 provides that a defendant may not collaterally attack a conviction based upon claims that were decided against him in a prior appeal or that could have been raised in a prior appeal. M.C.R. 6.508(D)(2)-(3). With respect to claims which could have been raised in a prior appeal, a defendant is entitled to relief only if he can establish both "good cause" for failing to assert the issue previously and "actual prejudice" resulting therefrom. M.C.R. 6.508(D)(3). In this context, "actual prejudice" is defined as a "reasonably likely chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand." M.C.R. 6.508(D)(3)(a)-(b).

The Sixth Circuit has held that denial of leave to appeal on the basis that a petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," constitutes a sufficient determination that the court's conclusion was based on procedural default. *See Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002). Furthermore, Rule 6.508(D), regularly followed since 1990, constitutes an independent and adequate state ground, the reliance on which precludes federal review of those issues against which it is applied. *Simpson*, 238 F.3d at 407.

In claims VI-XI, Petitioner asserts various claims that his right to due process of law and a fair trial were violated. Petitioner also asserts (in claims X and XI) that his right to the

27

effective assistance of appellate counsel was denied. Petitioner did not assert these claims in his direct appeal as of right, but instead asserted them in his post-conviction motions for relief. As previously noted, Petitioner's motion for relief from judgment was denied by the Michigan Court of Appeals and the Michigan Supreme Court on the ground that Petitioner failed to comply with Michigan Court Rule 6.508(D). With the exception of Petitioner's claims that his right to the effective assistance of appellate counsel was denied, the Court finds that Petitioner has procedurally defaulted these particular claims.

As for Petitioner's ineffective assistance of appellate counsel claims asserted in habeas claims X and XI, the Court reaches a different conclusion. Petitioner was represented by the same attorney on direct appeal before the Michigan Court of Appeals and the Michigan Supreme Court. While Petitioner did not assert any claim of ineffective assistance of appellate counsel on direct appeal, he cannot have been expected to do so considering that he was represented at the time by the attorney whose performance he now challenges. Thus, the Court finds that Petitioner has not procedurally defaulted his claims of ineffective assistance of appellate counsel (asserted in habeas claim s X and XI) because Petitioner could not have asserted such claims on direct appeal. *See* M.C.R. 6.508(D).

In sum, the Court finds that Petitioner has procedurally defaulted the claims asserted in habeas claims VI-XI, except for the claims that Petitioner's appellate counsel rendered ineffective assistance. Petitioner has failed to establish that good cause exists for his failure to properly raise these procedurally defaulted claims on his direct appeal as of right. However, even if the Court assumes that Petitioner can demonstrate good cause, he is still not entitled to relief because he cannot establish that he will suffer prejudice or that a fundamental miscarriage of justice will result

from the Court's failure to consider these claims, as they are without merit.  Petitioner's claims that his appellate counsel rendered ineffective assistance are likewise without merit.

A.    Jury Instruction Claim

Petitioner asserts that his right to a fair trial was denied because "the trial court failed to sua sponte instruct his jury with a cautionary instruction on accomplices, when evaluating the testimony of accomplice witnesses McPherson, King and Andrews." Petitioner asserts that such an instruction was necessary because accomplice testimony "must be viewed with some suspicion."

While the Court does not disagree with Petitioner's concern regarding accomplice testimony, neither McPherson, King, nor Andrews were accomplices to the killing of Cherell King. *See, e.g., People v. Frazier*, 1998 WL 1988884 at *4 (Mich. Ct. App., Nov. 17, 1998) ("to be an accomplice to a crime, the person must have 'knowingly and willingly helped or cooperated' in the killing"); *Poeple v. Ho*, 585 N.W.2d 357, 363 (Mich. Ct. App. 1998) (trial court properly declined to give instruction regarding accomplice testimony where there was no evidence that the individuals in question were involved in the charged crime).

As previously noted, to obtain relief because of "incorrect jury instructions," Petitioner must "show that the instructions, as a whole, were so infirm that they rendered the entire trial fundamentally unfair." *Murr v. United States*, 200 F.3d 895, 906 (6th Cir. 2000) (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). The Court discerns no error in the trial court's instructions to the jury. There was no basis for instructing the jury as to accomplice testimony. Nevertheless, the jury was instructed at length regarding its duty to evaluate the credibility of each witness, as well as various considerations to assist in making such evaluations. (Trial Transcript, January 24, 2002, 187-89). The Court concludes, therefore, that this claim raises no issue on which habeas relief may be granted.

B.      Fifth Amendment Claim

As noted above, Lanier McPherson testified concerning conversations that he had with Petitioner.  McPherson testified that during these conversations Petitioner admitted that he killed Charell King because he feared what King would tell the police about Petitioner's involvement in the killing of Abdul Scott.  Petitioner asserts that the admission of this testimony violated his Fifth Amendment right not to be compelled to be a witness against himself, as well as his Fourteenth Amendment right to due process of law.

The Fifth Amendment to the United States Constitution provides, in relevant part, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.  The due process protections of the Fourteenth Amendment also protect against the use of coerced confessions. *See, e.g., Arizona v. Fulminante*, 499 U.S. 279, 288-89 (1991); *Withrow v. Williams*, 507 U.S. 680, 688-89 (1993).  While Petitioner may not like the fact that his own statements were introduced against him, such violates the Constitution only where such statements were the product of compulsion or were otherwise involuntary. *See, e.g., Withrow*, 507 U.S. at 688-89.  Petitioner offers no evidence that his statements to McPherson were compelled or involuntary. In fact, Petitioner does not even assert that such is the case.  Absent evidence that his statements to McPherson were compelled or involuntary, Petitioner is not entitled to relief.  Accordingly, this claim raises no issue on which habeas relief may be granted.

C.      Prosecutorial Misconduct

Petitioner asserts that his right to a fair trial was violated by "multiple acts of prosecutorial misconduct," each of which is discussed below.

1.      Judge Shopping and Vindictive Prosecution

Petitioner asserts that his due process rights were violated "where the Prosecutor engaged in judge shopping and vindictive prosecution, by subjecting him to repeated charges of murder, when the State realized that they could not charge and convict him on the murder of Abdul Scott." According to Petitioner, the decision to charge him with the murder of Cherell King was motivated by retaliation for having secured a dismissal of all charges in the killing of Abdul Scott.

Petitioner has presented no evidence (and the Court discerns no such evidence from the record) that the prosecution engaged in any "judge shopping" or "forum shopping" activity in this matter. Petitioner's claim that he was vindictively prosecuted in this matter is similarly without merit. To prevail on a claim of vindictive prosecution, Petitioner must demonstrate either (a) "actual vindictiveness" by the prosecutor or (b) a "realistic likelihood of vindictiveness." *Bragan v. Poindexter*, 249 F.3d 476, 481-82 (6th Cir. 2001). To establish a realistic likelihood of vindictiveness, Petitioner must establish that the prosecutor has a "stake" in deterring Petitioner's exercise of his rights and, furthermore, that the prosecutor acted unreasonably. *Id.* Petitioner offers no evidence supporting his vindictive prosecution claims and the Court discerns nothing in the record supporting such. The Court concludes, therefore, that this claim raises no issue on which habeas relief may be granted.

2.      Perjured Testimony

Petitioner asserts that his constitutional rights were violated by the prosecution's intentional use of "false and/or perjured" testimony by Lanier McPherson.

A due process violation results from the prosecution's knowing use of false or

perjured testimony if "the false testimony could. . .in any reasonable likelihood have affected the judgment of the jury." *Rosencrantz v. Lafler*, 568 F.3d 577, 583 (6th Cir. 2009) (citations omitted). To establish a due process violation, the burden is on Petitioner to demonstrate that (1) the testimony was actually false, (2) the testimony was material, and (3) the prosecution knew of its falsity. Petitioner must establish that "the testimony was actually perjured, and mere inconsistencies in testimony. . .do not establish the knowing use of false testimony." *Id.* (citations omitted).

While it is reasonable to conclude that McPherson's testimony "affected the judgment of the jury," Petitioner offers no evidence that the testimony in question was false or that the prosecution knew that such was the case. Thus, this claim is without merit.

### 3. Deceptive Behavior

Petitioner next asserts that his right to a fair trial was violated when the prosecutor engaged in "deceptive behavior." As previously noted, the prosecutor in this case advanced the theory that Petitioner's motivation for murdering Cherell King was that he feared King would provide evidence implicating Petitioner in the murder of Abdul Scott. Petitioner argues that because the prosecution was unable to introduce evidence that Cherell King made any statement to the police implicating Petitioner in the killing of Abdul Scott, it was improper for him to argue to the jury that Petitioner killed King because he feared that he might implicate him in Scott's killing.

Petitioner's argument reflects a fundamental misunderstanding of the prosecution's theory of motive in this matter. The prosecution's theory was that Petitioner murdered Cherell King because he feared that King either had made statements to the police implicating him in Scott's killing or would do so in the future. Petitioner was certainly free to argue to the jury that King never

made any such statements to the police and that such tended to refute the prosecution's theory of motive. However, even if one assumes that King had not yet made any statements to the police implicating Petitioner in the killing of Abdul Scott, Petitioner's argument nonetheless fails.

While Petitioner may have learned at the outset of trial that King had not, in fact, made any statements to the police implicating Petitioner in Scott's killing, Petitioner has presented no evidence that he possessed this knowledge at the time of King's killing. As McPherson testified, prior to King's murder Petitioner did not know whether King had made any such statements to the police. According to McPherson, Petitioner feared that King had, or would in the future, implicate him in the killing of Abdul Scott. It was this fear that formed the basis for the prosecution's theory of motive. Petitioner offers nothing to suggest that this argument lacked sufficient evidentiary support or was otherwise improper. This claim, therefore, presents no issue on which habeas relief may be granted.

### D.      Jury Selection

Petitioner challenges the method by which his jury was selected. Michigan Court Rule 2.511(F) provides as follows:

> After the jurors have been seated in the jurors' box and a challenge for cause is sustained or a peremptory challenge exercised, another juror must be selected and examined before further challenges are made. This juror is subject to challenge as are other jurors.

Petitioner asserts that this court rule was disregarded when the prosecutor twice, when exercising his peremptory challenges, excused two jurors in rapid succession, the latter juror being excused before the previous one could be replaced. (Trial Transcript, January 22, 2002, 83, 100). Petitioner asserts that this occurrence violated his Sixth Amendment right to a fair and

34

impartial jury.

The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment thereto, guarantees to every criminal defendant the right to a "fair trial" by a panel of "impartial and indifferent" jurors. *Morgan v. Illinois*, 504 U.S. 719, 726-27 (1992). Petitioner has declined to articulate (and the Court fails to discern) how the alleged failure by the trial court to comply with Michigan Court Rule 2.511(F) deprived Petitioner of the right to be tried by an impartial jury.

On the two occasions in question, the individuals called from the jury pool to replace the two excused jurors were both questioned at length to determine if they harbored any bias and whether they could comply with the court's instructions. (Trial Transcript, January 22, 2002, 83-95, 100-110). After the replacement jurors were questioned, the parties were given the opportunity to challenge the replacement jurors for cause or excuse them with peremptory challenges before proceeding further. The alleged failure by the trial court to comply with a Michigan court rule cannot form the basis for habeas relief. 28 U.S.C. § 2254(a). Furthermore, the Court finds no evidence that Petitioner was denied his right to be tried by an impartial jury. Accordingly, this claim is without merit.


E.      Ineffective Assistance

Petitioner asserts that his trial and appellate counsel both rendered ineffective assistance in this matter entitling him to habeas relief.

Petitioner first asserts that his trial counsel failed to request that the jury receive a cautionary instruction concerning accomplice testimony. As discussed above, there existed no basis

for instructing the jury on this matter. Thus, counsel could not have been ineffective for failing to request such an instruction. Petitioner next asserts that his trial counsel failed to object to the violation of Michigan Court Rule 2.511(F), discussed above. Because Petitioner cannot demonstrate that he was prejudiced by his attorney's failure in this regard, this claim is without merit.

Finally, Petitioner faults his trial attorney for failing to investigate a meeting between the police and Cherell King. Plaintiff asserts that had his attorney undertaken such an investigation, he would have learned that during the meeting in question, King did not implicate Petitioner in the murder of Abdul Scott, thereby undermining the prosecution's theory of motive in this case. As discussed above, however, the prosecution's motive theory was not premised on statements that King may have made to the police during the meeting in question. Instead, the prosecution's motive theory was premised on Petitioner's then present concern that King might have made inculpatory comments to the police or would make such comments (or provide such testimony) in the future. This theory was amply supported by Lanier McPherson's testimony. Thus, Petitioner cannot establish that he was prejudiced by his attorney's failure. Thus, this claim is without merit.

Petitioner then asserts that his appellate counsel was ineffective for failing to assert these three issues on his direct appeal as of right. As discussed above, however, none of the claims in question has merit. Thus, counsel could not have been ineffective for failing to assert them on appeal. In sum, Petitioner's ineffective assistance of counsel claims are without merit and cannot, therefore, form the basis for the relief Petitioner seeks.

F.      Cumulative Effect Claim

Finally, Petitioner asserts that he is entitled to habeas relief based on the "cumulative

effect" of the various errors which occurred during his trial. First, Petitioner has failed to identify any errors or violations of federal law which occurred during his trial. Furthermore, as the Sixth Circuit has made clear, habeas relief cannot be premised upon an alleged accumulation of errors. *See Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). Thus, this claim raises no issue on which habeas relief may be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Gaffney's petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: December 29, 2009

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge